UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DR. CHEIKH SEYE, Plaintiff, | ) | |
| v. | ) | No. 1:17-cv-04384-JPH-MJD |
| THE BOARD OF TRUSTEES OF INDIANA UNIVERSITY a/k/a INDIANA UNIVERSITY-PURDUE UNIVERSITY INDIANAPOLIS, Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

After a long evaluation process, Dr. Cheikh Seye was denied tenure as a faculty member at the Indiana University School of Medicine. Understandably disappointed, Dr. Seye alleges that unlawful retaliation was the real reason he was denied tenure. IU seeks summary judgment. Dkt. [44]. Because Dr. Seye has designated no evidence allowing a reasonable jury to find that he was denied tenure in retaliation for engaging in protected activities, that motion is **GRANTED**.

## I.
## Facts and Background

Because IU has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

**A. IU School of Medicine's Tenure-Review Process**

At IU, the tenure track generally runs six years; after completing five years the professor submits a dossier, which is evaluated in the sixth year. Dkt. 45-2 at 2; dkt. 45-1 at 5 (Seye Dep. at 20). Candidates are evaluated on their research, teaching, and service. Dkt. 45-4 at 37. One requirement for tenure is that a candidate be rated "excellent" in at least one of those areas. *Id.* at 30, 37.

In the School of Medicine, the tenure-review process involves a host of committee and individual evaluations and recommendations over several phases. The dossier review begins with the department's Promotion and Tenure Committee, which issues a recommendation that is reviewed by the department chair. Dkt. 45-5 at 5 (Hess Dep. at 31–32). Next the School of Medicine's Promotion and Tenure Committee reviews the dossier, and that committee's recommendation goes to School of Medicine's dean. *Id.* (Hess Dep. at 32–33). Then the campus-wide Promotion and Tenure Committee makes a recommendation. *Id.* (Hess Dep. at 32–33). The dossier then goes to the Vice-Chancellor for consideration and a recommendation. Dkt. 45-7 at 5 (Paydar Dep. at 12). Finally, the Chancellor consults with the President of the University and decides whether tenure will be awarded. *Id.*

**B. Dr. Seye's Tenure Dossier**

IU appointed Dr. Seye in February 2009 as a tenure-track assistant professor in the School of Medicine's Department of Cellular & Integrative Physiology. Dkt. 45-2 at 2. Dr. Seye chose research as his area of required

excellence. Dkt. 45-1 at 6 (Seye Dep. at 21). He was originally on track to submit his tenure dossier in 2014. *See* dkt. 45-1. But after suffering significant injuries in a car accident in 2012, he requested a one-year extension. *See* dkt. 45-9. IU granted that request, dkt. 45-11, and Dr. Seye submitted his dossier in 2015, dkt. 45-1 at 14 (Seye Dep. at 56).

**1. Review of Dr. Seye's 2015 Dossier**

The department Promotion and Tenure Committee and the department chair, Dr. Michael Sturek, both recommended that Dr. Seye not receive tenure. Dkt. 45-1 at 16 (Seye Dep. at 61); dkt. 45-12. That led Dr. Seye to request another one-year extension to submit a new dossier, dkt. 45-14, which IU granted in July 2015, dkt. 45-16.

In October 2015, Dr. Seye sent IU a notice of tort claim alleging that Dr. Sturek discussed confidential medical information and included inaccurate information in a letter explaining his negative tenure recommendation. Dkt. 45-17.

**2. Review of Dr. Seye's 2016 Dossier**

Dr. Seye submitted his new dossier in 2016. Dkt. 45-1 at 24 (Seye Dep. at 96). While the department Promotion and Tenure Committee once again voted against tenure, *id.*, this time Dr. Sturek recommended tenure, dkt. 45-23. The School of Medicine's Promotion and Tenure Committee then voted against tenure, dkt. 45-1 at 29 (Seye Dep. at 120), and Dean of the School of Medicine Jay Hess upheld that decision, dkt. 45-25.

In December 2016, Dr. Seye supplemented his dossier with newly accepted publications and doctors' letters about his medical condition. *Id.* at 34 (Seye Dep. at 138–40). He was also involved in another car accident later that month and required medical leave to recover. *Id.* at 33 (Seye Dep. at 133–34).

In early 2017, the campus Promotion and Tenure Committee reviewed Dr. Seye's dossier and voted against tenure—but the supplemental materials that Dr. Seye submitted in December 2016 were not considered. Dkt. 45-28; dkt. 45-33 at 12. Executive Vice Chancellor Kathy Johnson reviewed the dossier next, and also recommended against tenure. Dkt. 45-29. Finally, Chancellor Nassar Paydar reviewed the dossier and decided that Dr. Seye would not receive tenure and that his appointment with IU would end in June 2018. Dkt. 45-31.

Dr. Seye filed a grievance with the Faculty Board of Review, which recommended that Dr. Seye's dossier be reviewed again with the additional information that he had submitted in December 2016. Dkt. 45-33 at 22–24. Chancellor Paydar accepted that recommendation. Dkt. 45-34.

**3. Review of Dr. Seye's Final Supplemented Dossier**

The department Promotion and Tenure Committee then reviewed Dr. Seye's dossier again, this time voting three to two in favor of tenure. Dkt. 45-35. Dr. Sturek again supported tenure. Dkt. 45-1 at 45 (Seye Dep. at 187). And the School of Medicine's Promotion and Tenure Committee voted eleven to one in favor of tenure. Dkt. 46-36. The school's dean, Dr. Hess, again

recommended against tenure, concluding that Dr. Seye's research productivity and scientific reputation did not warrant tenure. Dkt. 45-37. The campus Promotion and Tenure Committee then voted seventeen to two in favor of tenure, dkt. 45-38, and Executive Vice Chancellor Johnson recommended tenure, dkt. 45-39.

Chancellor Paydar conducted the final review, deciding in April 2018 that Dr. Seye would not receive tenure. Dkt. 45-41. About two weeks later, at Dr. Seye's request, he explained his decision:

> [S]ome factors that went into our judgment of your dossier included concerns over the quantity and quality of your publications, your research (grants and sponsored programs) productivity, low level of involvement in graduate student mentorship, and to some exten[t] your mixed external reviews. There is, however, no mechanical formula for the award of tenure—it is ultimately a judgment call.

Dkt. 45-40 at 2.

In November 2017, while the final supplemented dossier was under review, Dr. Seye filed this lawsuit alleging disability discrimination and retaliation in violation of the Rehabilitation Act. Dkt. 1. Chancellor Paydar learned of the lawsuit six weeks before he issued his final decision. Dkt. 45-27 at 5–6. Dr. Seye amended his complaint after Chancellor Paydar's decision, dkt. 25, and later dismissed his disability-discrimination claim, dkt. 42. IU has moved for summary judgment on the retaliation claim. Dkt. 44.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

## III.
## Analysis

For the retaliation claim to survive summary judgment, Dr. Seye must show "(1) statutorily protected activity; (2) adverse employment action; and (3) causal connection." *Scheidler v. Indiana*, 914 F.3d 535, 544 (7th Cir. 2019).[1] IU argues that none of Dr. Seye's protected activities[2] were causally connected

[1] Retaliation claims under the Rehabilitation Act and Americans with Disabilities Act share the same elements, so the Court cites cases under these laws interchangeably. *See Stanek v. St. Charles Comm. Unit Sch. Dist.*, 783 F.3d 634, 641, 643–44 (7th Cir. 2015).

[2] Dr. Seye argues that he engaged in three protected activities—filing a tort claim notice, filing a faculty board of review grievance, and filing this lawsuit. Dkt. 50 at 13.

to his tenure denial. Dkt. 46 at 19–27. Dr. Seye responds that a jury could find a causal connection because of the timing of the tenure denial, a failure to follow tenure process standards, and contradictory explanations for the tenure denial. Dkt. 50 at 15.

Rehabilitation Act retaliation claims require "but for" causation—mere "proof of mixed motives will not suffice." *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010). Under this standard, the issue is whether the tenure decisionmakers would have granted tenure but for their retaliatory conduct. *See Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 816 (7th Cir. 2007).

**A. Chancellor Paydar is the only relevant decisionmaker.**

IU argues that Chancellor Paydar was the sole decisionmaker. Dkt. 46 at 21. Dr. Seye contends that both Chancellor Paydar and Dean Hess were decisionmakers. Dkt. 50 at 13. After Dean Hess recommended against tenure in the final round of review, both the campus tenure committee and Executive Vice Chancellor Johnson reviewed Dr. Seye's dossier and recommended tenure. Dkt. 45-37; dkt. 45-38; dkt. 45-39. Only then did Chancellor Paydar decide that Dr. Seye would not receive tenure. Dkt. 45-41. This case therefore involves the "numerous layers of independent review" that are typical in tenure decisions. *See Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 667 (7th

---

IU argues that filing the tort claim notice was not protected activity, and even if it were, the tenure decisionmaker was not aware of it. Dkt. 46 at 19–21. The Court does not address these arguments because IU is entitled to summary judgment on the causal connection element.

Cir. 2007). Because of that layered review, possible discrimination from a "subordinate participant in the tenure process"—such as Dean Hess—can provide only "weak or nonexistent" evidence of a causal connection. *Id.*

For example, in *Adelman-Reyes*, the Seventh Circuit found that a dean's negative tenure recommendation could not support a causal connection despite evidence that the dean's recommendation "weighed heavily" in a subsequent review. *Id.* at 664, 667. Here, Dr. Seye has not designated evidence suggesting that Dean Hess had even that much influence on any of the three layers of review that came after his recommendation. *See* dkt. 50 at 15–20. Dean Hess's recommendation against tenure thus cannot support a causal connection, *see Adelman-Reyes*, 500 F.3d at 667, making Chancellor Paydar the only relevant decisionmaker.[3]

**B. Dr. Seye has not designated evidence of retaliation.**

Chancellor Paydar reviewed Dr. Seye's dossier and decided not to grant tenure. Dkt. 45-7 at 5, 9–11 (Paydar Dep. at 13, 29, 33–34). Dr. Seye has no direct evidence that Chancellor Paydar's decision was retaliatory. Dkt. 50 at 15; dkt. 45-1 at 38 (Seye Dep. at 154–56). He instead argues that a jury could infer retaliation based on circumstantial evidence, including a failure to follow tenure standards, contradictory explanations for the tenure denial, and the denial's timing. Dkt. 50 at 15.

[3] Chancellor Paydar made his decision in consultation with the President of the University, but Dr. Seye has not argued or designated evidence that the President retaliated against him. *See* dkt. 53 at 7, 7 n.1.

**1. Any deviations from the tenure process do not support an inference of retaliation.**

Dr. Seye alleges that Chancellor Paydar (1) downplayed his National Institutes of Health grant and was unjustifiably concerned that it would not be renewed, (2) did not account for recent publications, (3) improperly considered a lack of mentoring PhD candidates as relevant to excellence in research, (4) misconstrued letters from external reviewers as negative, (5) denied tenure despite Vice-Chancellor Johnson's positive recommendation, and (6) discussed Dr. Seye's application with Dean Hess and Vice-Chancellor Johnson. Dkt. 50 at 17–19. He argues that from these "multiple, inexplicable deviations," a jury could infer retaliatory conduct. *Id.* at 20.

But even if those alleged deviations and inconsistencies are supported by evidence and taken as true, they cannot create a triable issue of fact. Bad, contradictory, or inconsistent reasons for a tenure denial are not enough to make that denial illegal. *Redd v. Nolan*, 663 F.3d 287, 295 (7th Cir. 2011); *see also Robinson v. Alter Barge Line, Inc.*, 513 F.3d 668, 674 (7th Cir. 2008) ("Many [retaliation] suits are based on misunderstandings (the plaintiff can't believe there was a good reason for his having been sacked, so he imputes a bad one to the employer) . . . ."). What's required to survive summary judgment is "evidence from which a reasonable jury might conclude" that Dr. Seye would have received tenure but for his protected activity. *Redd*, 663 F.3d at 295. That is missing here because Dr. Seye has no evidence pointing directly to retaliation and the issues he identifies do not allow an inference of retaliation. *See* dkt. 50 at 15, 20; *Novak v. Bd. of Trs. of S. Ill. Univ.*, 777 F.3d

966, 975 (7th Cir. 2015) (upholding summary judgment because the evidence did not show disability discrimination but—at most—"lapses in . . . assessment methodology that might have resulted in unfairness").

The unique nature of tenure decisions further shows that Dr. Seye's alleged process deviations cannot raise an inference of retaliation. Tenure systems defy "fixed, objective criteria" because decisions "necessarily rely on subjective judgments about academic potential." *Blasdel v. Northwestern Univ.*, 687 F.3d 813, 815 (7th Cir. 2012) (quoting *Vanasco v. National–Louis Univ.*, 137 F.3d 962, 968 (7th Cir. 1998)). Moreover, the Court "must not ignore the interest of colleges and universities in institutional autonomy." *Id.* at 816. Tenure is nuanced, and requires "something more than mere qualification; the department must believe the candidate has a certain amount of promise." *Sun*, 473 F.3d at 815. So while universities may not illegally discriminate or retaliate in the name of institutional autonomy, "courts must understand the nature and mission of the institution and evaluate the evidence accordingly." *Novak*, 777 F.3d at 976.

These concepts are particularly important in this case. Dr. Seye's focus at IU was research, and the parties contest whether his research was up to snuff. Dkt. 45-1 at 6 (Seye Dep. at 21); dkt. 46 at 26; dkt. 50 at 18. But research quality and quantity are hard for courts to judge, and the stakes are high:

> If *A* publishes an excellent academic paper every five years on average, is she better or worse than *B*, who publishes a good but not excellent paper on average

> every six months, so that at the end of five years he has published 10 papers and she only 1? Quantity and quality are (within limits) substitutes . . . . Or suppose Professor *C* used to publish a paper every six months, but she has slowed down, while *D*, who is younger, has not. That is an ominous sign from the standpoint of granting *C* tenure, because a tenured professor is very hard to fire even if he or she has ceased to be a productive scholar. With mandatory retirement now unlawful, the grant of tenure is often literally a lifetime commitment by the employing institution, barring dementia or serious misconduct.

*Blasdel*, 687 F.3d at 816. In the end, Dr. Seye has designated no evidence of deviations or inconsistencies from which a jury could infer retaliation, especially considering the subjective and academic nature of tenure decisions.

**2. Timing does not support an inference of retaliation.**

Dr. Seye also argues that a reasonable jury could infer retaliation based on the timing of the tenure denial. Dkt. 50 at 15. But Chancellor Paydar learned of this lawsuit six weeks before denying tenure, and Dr. Seye has not designated evidence that Chancellor Paydar learned of other protected activity closer than that. Dkt. 45-27 at 5–6. That timing, by itself, cannot show causation. *See Povey v. City of Jeffersonville*, 697 F.3d 619, 624 (7th Cir. 2012) (finding that termination three weeks after a complaint could not, by itself, support causation) (citing *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010)).

Dr. Seye nevertheless argues that this timing can show retaliation because Chancellor Paydar took an adverse employment action at his first opportunity to retaliate. Dkt. 50 at 16 (citing *McGuire v. City of Springfield, Ill.*,

280 F.3d 794, 796 (7th Cir. 2002)). But that's not so—as Dr. Seye later admits, Chancellor Paydar could have denied Dr. Seye's request for a re-review of his dossier with his late-coming publications. *Id.* Dr. Seye argues that Chancellor Paydar may have allowed the re-review out of deference to the faculty board's recommendation, *id.* at 16–17, but even if that speculation is true, Chancellor Paydar did not take action against Dr. Seye at his first chance, so the timing here does not support retaliation.

**C. No designated evidence shows that Dr. Seye's tenure denial was pretextual.**

Finally, no designated evidence shows that IU's reasons for denying tenure were pretextual. Dr. Seye has not identified other professors who were similarly situated but treated better. *See Anderson v. Donahoe*, 699 F.3d 989, 996 (7th Cir. 2012). And the reasons Chancellor Paydar gave for the tenure denial—including concerns over the quantity and quality of publications, research grant productivity, and mixed external reviews—had been identified as concerns long before any of Dr. Seye's protected activities. That undermines a causal connection between those activities and the tenure denial. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 287 (7th Cir. 2015) (finding insufficient causation evidence when the protected activity came after discipline began). While some of those concerns had been mitigated by a recent uptick in publications, that short-term boost is not enough to show pretext given the "lifetime commitment" of tenure. *Blasdel*, 687 F.3d at 816. And except for that spike in publications, Dr. Seye offers no evidence contradicting or undermining the "legitimate, non-discriminatory reasons"

given for the tenure denial. *Silk v. Bd. of Trs., Moraine Valley Comm. Coll.*, 795 F.3d 698, 710 (7th Cir. 2015).

In short, there is no designated evidence from which a reasonable jury could find that Dr. Seye would have been granted tenure but for retaliation. There is therefore no triable issue of fact and IU is entitled to summary judgment.

## IV.
## Conclusion

IU's motion for summary judgment is **GRANTED**. Dkt. [44]. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 5/8/2020

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Samuel Mark Adams
JOHN H. HASKIN & ASSOCIATES, LLC
sadams@jhaskinlaw.com

James R. A. Dawson
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
jdawson@taftlaw.com

John H. Haskin
JOHN H. HASKIN & ASSOCIATES, LLC
jhaskin@jhaskinlaw.com

Melissa A. Macchia
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mmacchia@taftlaw.com

Michael C. Terrell
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mterrell@taftlaw.com

Bradley L. Wilson
JOHN H. HASKIN & ASSOCIATES, LLC
bwilson@jhaskinlaw.com